Froessel, J.
During the early morning hours of December 8, 1956, members of the New York State Troopers, together with members of the Beacon City Police Department and of the Dutchess County District Attorney’s office, conducted a gambling raid at No. 478 South Avenue in the City of Beacon. Defendant, who was the Athletic Director of Beacon High School, and had been employed by the Beacon school system for 23 years (short of 1% years to retirement), was among those *8 found on the premises at the time of the raid. When found, he was seated in a room other than the one in which gambling was taking place, eating a sandwich and drinking coffee while waiting for a friend whom he had accompanied to the premises preparatory to returning home. Defendant had never been convicted of any crime, and had never been to those premises before.
All of the defendants apprehended in the raid, including defendant-appellant, were ordered into the room used for the gambling operation and formed into a line for presentation singly to the City Judge, who had been summoned to hold court at the raided premises. At that time, Trooper Herron prepared a penciled longhand unsworn information, which did not state the name of any defendant, charging a violation of subdivision 1 of section 722 of the Penal Law, viz., disorderly conduct. As each defendant appeared before the Judge for arraignment, his name was supplied to the latter from another document, an arrest record made earlier. Defendant pleaded guilty to the charge and was fined $10, which was then paid.
Defendant testified that he was advised by a member of the State Troopers that “ they had worked this thing all out and everybody would be charged with disorderly conduct, you pay $10.00 and go home that “ there won’t be any names in the paper ’ ’; and that he did not realize he was in a court. He stated that he was also advised that 1 £ disorderly conduct wouldn’t bother anybody in Civil or State Service ”.
Defendant also testified that he did not know that he was under arrest and, had he known, he ‘1 certainly would not have pleaded guilty ”. No one told him specifically that he was under arrest, and his understanding of the situation was that “ the only arrests will be the people who ran the game ’ ’. The City Judge testified that he did not advise defendant that he was under arrest. Trooper Herron also testified that he did not tell defendant individually that he was under arrest, but that all persons present had been told that it was a raid and to be quiet so no one would be hurt. Defendant repeatedly maintained that his sole motive in pleading guilty was to avoid notoriety and save himself and the Board of Education from embarrassment.
Following the pleas and disposition of all of the defendants on the morning of the raid, a typewritten information, identical in form with the penciled information with the exception that *9 it contained the name of defendant-appellant and the allegedly erroneous date of December 9, 1956, was prepared by Trooper Herron, and filed as a permanent record of the court. The penciled information was not filed nor produced until the institution of the coram nobis proceeding.
On December 10, 1956 the school authorities sent defendant a notice of suspension, specifying as the gounds therefor his arrest in a gambling raid, his arraignment and guilty plea and fine of $10. Thereafter defendant was served with a notice of charges and hearing. After hearing testimony on January 17, 1957, the members of the School Board, on January 21, 1957, dismissed defendant from the staff of the Beacon City School District, two members dissenting. The Education Commissioner affirmed, and an article 78 proceeding seeking review is presently pending.
Defendant thereafter made this application in the nature of a writ of error coram nobis in the Beacon City Court of Special Sessions for an order vacating and expunging from the records the judgment of conviction which followed his plea of guilty. The minutes of the administrative hearing were made a part of defendant’s petition, which sought relief on the following grounds: (1) that he did not know that he was under arrest; (2) that he was not advised of his right to counsel and to an adjournment; and (3) that the information was insufficient as a matter of law. On August 4, 1959 the Beacon City Court directed the vacating of the judgment of conviction and of defendant’s plea of guilty, and the rearraignment of defendant.
Both parties appealed from this order to the Dutchess County Court. In reversing the court below and dismissing defendant’s application, the County Court held that coram nobis is not the proper method of testing the sufficiency of the information. Both courts below found on substantial evidence that defendant must have known that he was under arrest, and that he was advised of his rights.
Defendant additionally contends that the administrative action taken against him, namely, his dismissal from the school system, constitutes an excessive punishment and deprivation of due process guaranteed under the Eighth Amendment to the Constitution of the United States. Such administrative action is not before us on this appeal.
*10 This leaves for consideration defendant’s primary claim that the so-called information to which he was asked to plead was a complete nullity. It is well settled that coram nobis is not available as a means of attack upon a defective information where such defect is apparent on the record (People v. Eastman, 306 N. Y. 658; People v. Sadness, 300 N. Y. 69, 74). In the case at bar, however, the invalidity of the information to which defendant pleaded guilty could only be shown by reference to matters dehors the record—viz., the minutes of the administrative hearing and the invalid information itself.
Had his attorney sought to appeal, it would have served no purpose whatever, for he would not have found in the court record the invalid penciled draft to which defendant pleaded, and which remained in the possession of the State Trooper, but would only have discovered the typewritten information prepared after defendant had pleaded guilty. Not until after the administrative hearing, and after the time to appeal had expired, did defendant or his attorney first learn that there had been a substitution of a typewritten information in proper form, but prepared after conviction, for a suppressed invalid penciled unsworn draft charging no named person. Under these circumstances coram nobis is not only the proper remedy, but the exclusive one, available to defendant.
In answering defendant’s argument, respondent urges first that there was a sufficient information consisting of the penciled longhand paper prepared by Trooper Herron and the arrest report from which the name of each defendant was read as he appeared for arraignment. Furthermore, respondent contends that there is no requirement of a written information in cases of offenses, such as this one, as distinguished from misdemeanors. These arguments are without merit and the information was a complete nullity-—a mere scrap of paper.
In the first place, although the entry in the criminal docket states that the information, was “ subscribed and sworn to ” by Trooper Herron, the testimony of the City Judge refutes this. He stated that it had not been sworn to, but “had just been written out, and Sergeant Herron was sitting there alongside of me ’ ’. He said that he read what was on that sheet of paper to each defendant, and that the name was supplied to him by Sergeant Herron. The information which appears in the record *11 as having been sworn to before him was actually prepared and sworn to at some later time, and was not in existence at the time of this defendant’s arraignment. Furthermore, there is nothing on either the unverified penciled draft or the arrest report to indicate that they were to be read together.
Secondly, although there may be greater informality when dealing with offenses (People v. Grogan, 260 N. Y. 138, 141-142; People v. Jacoby, 304 N. Y. 33, 45), there must at the very least be some pleading charging the defendant with a crime or offense. ‘ ‘ The requirement that an indictment and an information must state the crime with which a defendant is charged, and the particular acts constituting that crime is more than a technicality; it is a fundamental, a basic principle of justice and fair dealing as well as a rule of law” (People v. Zambounis, 251 N. Y. 94, 97; emphasis supplied). This requirement is not met by an information which does not state the name of the person charged. To be sufficient, an information must be directed against some person (People v. Knapp, 152 Misc. 368, 370).
Bather than dispense with the basic requirement of an information, as respondent suggests we might do, this court has reversed a conviction for the offense of disorderly conduct because the information was insufficient as a matter of law (People v. Schultz, 301 N. Y. 495; see, also, People v. Mulvey, 206 Misc. 771). We could not have reached that conclusion without holding that a sufficient information is necessary. “Forms and procedure still have their place and purpose in the administration of the law; without them we would have chaos ” (People v. Zambounis, supra).
In People ex rel. Davis v. Sheriff (3 Misc 2d 231, 233), also a case involving a conviction for disorderly conduct, the court, after noting the requirement of a written information in the case of a prosecution for a misdemeanor, aptly stated: ‘ ‘ While I am mindful of the fact that * * * we are here dealing with a so-called ‘ offense ’, nevertheless, where such offense is of the type which provides a maximum jail sentence of six months, I believe that all our traditional procedures and safeguards required in a prosecution for a misdemeanor, should be likewise complied with.” So, in the case at bar, defendant could have been sentenced to six months’ imprisonment (Penal Law, § 723). *12 And in People v. Scott (3 N Y 2d 148, 153) we stated: “If in a ease involving a misdemeanor a mere unverified summons is to be the equivalent of an information, then any unverified paper could be treated likewise. This would be a dangerous practice, for there are countless misdemeanors for which a defendant may be punished by imprisonment for a year plus a fine of $500 (Penal Law, § 1937), not to speak of additional penalties, such as loss or suspension of a license to drive an automobile, to practice one’s profession or to engage in a licensed business.” (Emphasis supplied.) It is clear from defendant’s dismissal by the school authorities in this case that serious consequences may follow conviction for an offense as well as for a misdemeanor.
The order of the County Court should be reversed, and the judgment of conviction vacated.
Chief Judge Desmond and Judges Dye, Euld, Van Voomps, Burke and Foster concur.
Order of the County Court reversed and judgment of conviction of the City Court of the City of Beacon vacated.